IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

**KEHINDE BALOGUN**,

        Plaintiff,

vs.

**THE BOARD OF REGENTS OF THE**
**UNIVERSITY OF WISCONSIN-MADISON**
1860 Van Hise Hall
1220 Linden Drive
Madison, WI 53706

                                                                   Case No. 18-cv-301

        Defendant.

_____

**COMPLAINT**
_____

NOW COMES the plaintiff, Kehinde Balogun, pro se, and hereby states the following as his complaint in the above-referenced matter.

## NATURE OF PROCEEDINGS

1.    This civil action is brought under Title 7 of the Civil Rights Act of 1964 as amended in 1991, 42 U.S.C. § 2000e et. seq.  It is brought to address the race and national origin discrimination and retaliation for engaging in speech protected by Title 7 employed by the defendant to which the plaintiff was subjected, resulting in his termination from employment.

## THE PARTIES

2.    Kehinde Balogun is a citizen of the United States of America and of the State of Wisconsin, and at all times relevant to this matter resided in Rock County in the Western District of Wisconsin.

3. The Board of Regents of the University of Wisconsin- Madison is a body that governs the state run institution, the University of Wisconsin-Madison, in Madison, Dane County, Wisconsin.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to § 706 of Title 7 of the Civil Rights Act of 1964 as amended in 1991, 42 U.S.C. § 2000e-5(f) and pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This claim may be venued in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391 insofar as all of the parties lived or conducted business in the Western District of Wisconsin and the circumstances giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

6. Kehinde Balogun is a United States citizen whose country of national origin is Nigeria.

7. Prior to his hiring at the University of Wisconsin-Madison, Balogun had extensive education with computers from the years 1999 to 2005. Balogun's prior work experience involved work as a computer technician and network technician at Toronto Bank, IBM Solution Center and Capitol Indemnity. The duties he performed at those employers were the same kinds of tasks he performed when he joined UW-Madison. Balogun was hired in the spring of 2007 as an IS Technical Resources Senior at UW-Madison. When Balogun was hired, he was in Facilities, Planning and Management, which then became AIMS.

8. Kevin Cherek was Balogun's supervisor during all times that he worked for the University of Wisconsin-Madison.

9. When Balogun started in 2007 it was Wayne Bradley, Kate Mulcher and Balogun on the desktop support team manning the help desk.

10. During the time that he was on the help desk on the desktop support team, Balogun was responsible for handling the calls and finding a solution to the callers' problems.

11. Wayne Bradley was an IS Net Services Senior when Balogun was hired. Katie Mulcher was an IS Technical Services Senior when Balogun was hired. Bradley and Mulcher are both Caucasian.

12. The help desk schedules show that Balogun was on the help desk most days for five of his eight hours. He spent the majority of the other three hours of the day working on those incidents tasks.

13. Balogun did not spend very much time building computers when he was first hired; that kind of work was performed by the students when Balogun first started.

14. Balogun approached Cherek and asked for a job reclassification towards the end of 2007. He made the request for reclassification because he realized he was doing the same work as his co-workers with higher classifications.

15. Wayne Bradley had a higher classification of IS Network Services Senior, but he and Balogun performed the same work.

16. When Cherek recognized Bradley was doing work outside his classification, Cherek affirmatively went to Human Resources on Bradley's behalf. Cherek never went to Human Resources on Balogun's behalf, despite knowing that Balogun was doing work outside his classification based on Cherek's weekly review of the Applix cases.

17. Cherek made comments criticizing Balogun's performance starting in January, 2009, and at one office meeting asked Balogun whether he was "retarded."

18. Cherek subjected Balogun to unfair and unfound performance criticism without any evidence of same prior to Balogun asking for a job reclassification in 2009.

19. In July, 2009, Cherek told Balogun he was a low-level employee and that is why he was paid "really cheap." Balogun found out that Balogun was making approximately one-half the salary of other employees who were performing the same job duties as he was.

20. Subsequent to that meeting, Balogun's job duties were changed to a low level entry employee position, and his job description was changed, as well. This prohibited him from being considered for advancement with the department. For example, in 2011 Travis Harvey, a Caucasian student, was hired as IS Technical Resources Senior, and ended up being promoted to IS Technical Service Professional, which is a higher classification, while Balogun remained in the same lower position. Again, this is how Balogun came to be lumped with the students until he was laid off in June of 2015.

21. On June 29, 2015, Balogun was laid off from the University of Wisconsin-Madison. During that time Cherek was interviewing others for a project position in his department for which Balogun was qualified. Balogun was the only non-Caucasian full-time permanent employee, and he was the only employee laid off, even though there were several temporary project employees in the department. Balogun was not considered for the desktop support job. Instead, the University of Wisconsin-Madison hired a temporary Caucasian employee for the full-time position.

22. On September 9, 2015, Balogun applied for an IS Network Support Technician position. He was qualified for that position.

23. On September 24, 2015, Balogun had a phone interview with three individuals, one of whom was Cherek. The position was in Balogun's job classification.

24. On October 28, 2015, Balogun was informed by the University of Wisconsin-Madison Human Resources Department that this position had been canceled.

25. There was a new position that was posted for which Balogun again applied. It had the exact same job description as the initial desktop support position which had been cancelled on October 28, 2015. This position, however, required a higher classification, which made Balogun ineligible for the position, and in fact he never received an interview for the position.

26. The University of Wisconsin-Madison policy on restoration is to bring back laid-off employees (Wisconsin Human Resources Handbook, Section 232.140), which indicates that when a vacancy occurs in the employing unit at or closest to the same or counterpart pay range level from which an employee left, the employee shall be recalled in inverse order of layoff, providing the employee is qualified to perform the work after being given the customary orientation provided newly hired workers in such position, unless the employee previously declined a similar offer." (See Human Resources Handbook on restoration, Exhibit A.)

27. The University of Wisconsin-Madison refused to rehire Balogun because of the previous complaints he filed against his supervisor and the IS director.

28. Cherek was aware that Balogun had filed many complaints of discrimination and it angered him.

29. Cherek was the employee responsible for determining if Balogun satisfactorily performed his job duties.

30. Balogun was not given a good faith opportunity to continue his employment.

31. Balogun was laid off because his job description was changed to a low level entry position in July, 2009, which caused Balogun to have the lowest level of employment of anyone in the department in which he worked.

32. Cherek terminated Balogun on June 29, 2015, because of Balogun's race, national origin, and/or because Balogun complained about discrimination made unlawful by Title 7.

33. Balogun filed a timely charge of discrimination with the Equal Rights Division, Equal Employment Opportunity Commission, on or about March 2, 2016.

34. On or about February 2, 2018, Balogun received a right to sue letter from the EEOC. This finding is attached hereto as Exhibit B.

### FIRST CAUSE OF ACTION AGAINST THE UNIVERSITY OF WISCONSIN-MADISON, TITLE 7 VIOLATION–UNLAWFUL DISCRIMINATION ON ACCOUNT OF RACE OR NATIONAL ORIGIN

35. The plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

36. By engaging in the conduct set forth above, the University of Wisconsin-Madison discriminated against Balogun on account of his race or national origin, in violation of Title 7.

37. This conduct cause Balogun emotional suffering and economic loss.

### SECOND CAUSE OF ACTION AGAINST THE UNIVERSITY OF WISCONSIN-MADISON, TITLE 7 VIOLATION–RETALIATION

38. The plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

39. By engaging in the conduct set forth above, the University of Wisconsin-Madison terminated Balogun from his position because he opposed conduct made unlawful by Title 7.

40. This termination has caused Balogun emotional suffering and economic loss.

WHEREFORE, plaintiff demands the following relief:

1. An award of compensatory damages that fully compensate Balogun for his losses.

2. Equitable relief, including but not limited to an award of back pay.

3. An award of attorney fees and costs.

4. Any other relief the Court deems just and equitable.

## JURY DEMAND

The plaintiff respectfully requests that this matter be tried before a jury of six competent persons.

Dated this 24th day of April, 2018.

EISENBERG LAW OFFICES, S.C.

/s/ Mark A. Eisenberg
Mark A. Eisenberg
State Bar Number: 1013078
308 E. Washington Avenue
P. O. Box 1069
Madison, WI 53701-1069
(608) 256-8356

Attorneys for Plaintiff