IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KEHINDE BALOGUN,

                        Plaintiff,                          OPINION AND ORDER

            v.                                                    18-cv-301-wmc

THE BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,
KEVIN CHEREK, and BOBBY BURROW,

                        Defendants.

This case is set for a jury trial commencing August 12, 2019, to resolve plaintiff Kehinde ("Tony") Balogun's claims against the University's Board of Regents, his former supervisor, Kevin Cherek, and Cherek's supervisor and AIMS director, Bobby Burrow. In advance of the final pretrial conference scheduled for July 30, 2019, the court issues the following opinion and order with respect to the reserved portion of defendants' motion for summary judgment and the parties' pending motions in limine.

OPINION

## I. Defendants' Motion for Summary Judgment (dkt. #22)

In its summary judgment decision, the court reserved as to the discrimination claim, asking plaintiff to "provide *any* case law allowing a discrimination claim to proceed where the plaintiff is the only member of his protected class." (Summ. J. Op. (dkt. #60) 21.) The court also asked for the performance evaluations of Mutchler and Bradley, who plaintiff had identified as his two closest comparators. (*Id.*) Otherwise, the court warned, "plaintiff's discrimination claim is unlikely to survive to trial." (*Id.*) Having reviewed

plaintiff's follow-up submissions, defendants' summary judgment motion will now be granted on the discrimination claim.

While there is no dispute that plaintiff worked on the helpdesk with both Mutchler and Bradley, and made less than they did, their performance evaluations demonstrate that they were not "similarly situated" for purposes of acting as appropriate comparators. The inquiry to determine whether employees are similarly situated is "flexible, common-sense, and factual." *David v. Board of Trs. of Comty. Coll. Dist. No. 508*, 846 F.3d 216, 225-26 (7th Cir. 2017) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012)). Typically, a plaintiff must show that his comparator: "(1) dealt with the same supervisor, (2) w[as] subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him]." *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014) (quoting *Coleman*, 667 F.3d at 847 (internal quotation marks omitted)); *see also Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008) ("[T]he comparator must . . . be similar enough 'to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, [so as to] isolate the critical independent variable: complaints about discrimination." (alteration in original) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007))).

While all of plaintiff's performance evaluations -- except for the last one -- concluded that his performance was "satisfactory," they contained a fair number of critical comments. Balogun's 2008 performance evaluation noted that he: (1) "could use some refresher training"; (2) "needs to improve his ability to focus on the details of the tasks he is

performing"; (3) sometimes "waits too long before consulting senior technicians"; (4) "will perform significant tasks without informing/consulting with senior technicians"; and (5) sometimes "forgets to enter calls in[to Applix]." (2008 Perform. Eval. (dkt. #25-1) 7.) Three of these comments reappeared in his 2010 evaluation, in addition to criticism that: "customers indicate that sometimes his answers are incomplete"; and "Tony has had trouble accepting a team leader." (2010 Perform. Eval. (dkt. #25-1) 9-10.) His 2012 evaluation noted that: (1) "[h]is time from logged-to-close is one of the lowest in the group"; and (2) "Tony participates minimally in team meetings. He could participate more effectively, e.g. provide more feedback when requested during group discussions.") (2012 Perform. Eval. (dkt. #25-1) 12-13.)

By comparison, Bradley's and Mutchler's evaluations are markedly more positive. Bradley's 2007 performance evaluation contained one negative comment, but even that was couched in terms of subsequent improvement: "Although Wayne's communication style can be overly abrupt and pointed he has improved his approach." (Bradley 2007 Perform. Eval. (dkt. #75-1) 1.) Bradley's 2008 performance evaluation included no critical comments. (Bradley 2008 Perform. Eval. (dkt. #75-4) 1-2.) Bradley's 2010 review was also overwhelmingly positive with him receiving "[e]xceeded [e]xpectations" in seven different categories, although there was one negative comment and one area requiring improvement. (Bradley 2010 Perform. Eval. (dkt. #75-8) 1-2 ("Wayne tends to bring a negative attitude into the work environment.").) Bradley's 2012 evaluation was even more glowing, identifying six areas in which he was *greatly* exceeding expectations and four in which he was exceeding expectations, while containing only one negative comment.

(Bradley 2012 Perform. Eval. (dkt. #75-11) 1-2 ("He needs to be more proactive in learning and mastering [OS patches via Altiris].").)   Finally, his 2014 performance evaluation again identified multiple areas in which he exceeded or greatly exceeded expectations, while identifying no areas requiring improvement.   (Bradley 2014 Perform. Eval. (dkt. #75-12) 1-3.)[1]

While Mutchler's 2007 performance evaluation noted three areas of concern (improving initiative and productivity, pace of project completion, and consistency in professional demeanor), there had been significant recent improvement for all of them. (Mutchler 2007 Perform. Eval. (dkt. #75-2) 1.)  Her 2008 performance evaluation had no critical comments.   (Mutchler 2008 Perform. Eval. (dkt. #75-3) 1-2.)   Her 2009 performance evaluation, on the other hand, included two areas of evaluation that required improvement, as well as two negative explanatory comments.   (Mutchler 2009 Perform. Eval. (dkt. #75-5) 1 ("Katie had difficulty meeting the reporting needs of AIMS' customers.  Katie has been unable to complete her last assigned report in a timely fashion"; and "Katie occasionally needs to be reminded of tasks that have been assigned to her. Several have taken longer than necessary to complete.").)[2]   Accordingly, Mutchler and Bradley are not appropriate comparators.

As far as cases allowing such underwhelming evidence of so-called comparators to

---

[1] Defendants also submitted Bradley's 2015 performance evaluation, however, it was completed by Diana Rogers, instead of defendant Cherek, so it is of limited relevance.

[2] Mutchler's file also contained a "classified" performance review from 2010 while she was working for Sharlene Heacox on the Applications Development Services team within AIMS.   (Mutchler 2010 Perform. Eval. (dkt. #75-9) 1-2.)   However, she resigned on August 9, 2010.   (Mutchler Resignation (dkt. #75-10) 1.)

go forward to trial despite a lack of any evidence of racial animus, plaintiff principally cites *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840 (7th Cir. 2007), which does not help him. Certainly, Pantoja alleged claims of race and national origin discrimination, harassment, and retaliation based on disciplinary actions, failure to promote, and discharge under Title VII and 42 U.S.C. § 1981. However, the Seventh Circuit concluded that Pantoja's "discrimination and harassment claims cannot go forward," 495 F.3d at 843. As here, the Seventh Circuit found that the plaintiff offered no "evidence that would support the proposition that [defendant's] expectations were tailored to the race or national origin of the employee," as he had failed to demonstrate that his identified comparator had the same performance issues he had. *Id.* at 847. In the termination context, the Seventh Circuit also explained that even after establishing that the plaintiff was "meeting his employer's legitimate expectations," he "had to show, as the fourth element of his *prima facie* case, 'that his employer sought someone to perform the same work after he left.'" *Id.* at 846 (quoting *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1217 (7th Cir. 1985)). This, too, does not help the plaintiff here, since there is no evidence to suggest someone was hired to replace him; on the contrary, Cherek considered his position to be the most easily eliminated.

The other case cited by plaintiff, *Byers v. Ill. State Police*, No. 99 C 8105, 2000 U.S. Dist. LEXIS 17159 (N.D. Ill. Nov. 22, 2000), is also unhelpful to Balogun. In *Byers*, the court permitted plaintiffs to proceed on their equal protection discrimination claims because defendants failed to even address that plaintiffs were claiming discrimination based on their sex. *Id.* at *4-*5. Additionally, it should go without saying that the procedural

posture of that case was itself distinguishing given that the standards for granting a motion to dismiss or one for summary judgment are vastly different: the former is a question of pleading, the latter is a question of evidence. In *Byers*, plaintiffs alleged as the basis for their Title VII claim that they were qualified for the position of master sergeant but were passed over for promotion in favor of less qualified men. *Id.* at *6-*7. Here, the plaintiff has failed to come forward with evidence from which a reasonable jury could find that he was equally qualified as his comparators, much less more qualified.

In the end, the court is left with Balogun's wholly unsupported supposition that he was discriminated against because of his membership in two protected classes. His supposition alone without *any* underlying direct or indirect evidence is insufficient to go forward in the face of a motion for summary judgment.[3] As the Seventh Circuit has explained, discrimination is established where the evidence viewed as a whole would permit a reasonable fact finder to conclude that the plaintiff's protected class *caused* the adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Engquist v. Ore. Dept. of Agr.*, 553 U.S. 591, 594 (2008) ("We hold that such a 'class-of-one' theory of equal protection has no place in the public employment context.").

---

[3] Belatedly, plaintiff filed "additional evidence of disparate treatment related to plaintiff's race/national origin claim," summarizing Bradley's testimony that: (1) Mutchler missed a significant amount of work and "just sat at her desk" when she was present; (2) Bradley could have come into work late once a week without being disciplined; and (3) not everything got documented in Applix, but he was not formally disciplined for failing to document things. (Add'l Evid. (dkt. #99) 1-2 (capitalization altered).) In this document plaintiff also notes Cherek's ERD testimony that he never disciplined Balogun's helpdesk colleagues, even though he was aware of complaints about their performance. (*Id.* at 2.) Plaintiff appears to argue that Cherek unevenly applied the University's legitimate performance expectations between Balogun and his comparators. However, this undeveloped argument is too little, too late. Plaintiff could and should have developed this argument in opposition to defendants' motion for summary judgment instead of raising its specter on the eve of trial.

Accordingly, defendants' motion for summary judgment on plaintiff's discrimination claim is granted. At the final pretrial conference, the court will entertain argument about what conduct is admissible to provide context for plaintiff's retaliation claim.

## II. Defendants' Motion in Limine (dkt. #61)

Recognizing that the court already determined that claim preclusion did not apply, defendants seek to prevent the relitigation of issues already decided in the state proceedings.[4] (Defs.' MIL (dkt. #61) 2.) First, defendants contend that issue preclusion applies because: (1) the standard to prove retaliation is the same under the Wisconsin Fair Employment Act and Title VII; (2) the ERD, LIRC and the Dane County Circuit Court found there was no probable cause to conclude that Balogun was retaliated against when his position title did not change, he was not promoted, his position description was revised, he was paid less than his colleagues, and he was disciplined on April 27, 2010; (3) Balogun was represented in the state proceedings; and (4) requiring defendants to relitigate would be fundamentally unfair. (*Id.* at 3-4.)

In response, plaintiff contends that the application of issue preclusion rests on considerations of fairness that weigh against application here. (Pl.'s Opp'n (dkt. #85) 4-5.) Specifically, he contends that: (1) his opportunities for review in the state proceedings were limited because of the deferential standard applied; (2) his retaliation claim is distinct from that before the ERD because of additional, later conduct, which would skew the evidence; (3) the proceedings here are markedly different from the state proceedings

---

[4] Defendants' motion addresses both plaintiff's discrimination and retaliation claims, but the court will only address the retaliation claim in light of its summary judgment decision above.

because of the application of the Federal Rules of Evidence and the jury's involvement; and (4) a policy of applying issue preclusion in cases like this would incentivize continued abuse of litigants who immediately seek redress. (*Id.* at 3-5.)

"Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has already been litigated and decided in a prior action." *N. States Power v. Bugher*, 189 Wis.2d 541, 550, 525 N.W.2d 723, 727 (1995) (internal citation omitted). Application of the doctrine of issue preclusion requires that: (a) the issue was "actually litigated" in the earlier action; and (b) applying issue preclusion is fair. *Masko v. City of Madison*, 2003 WI App 124, ¶ 4, 263 Wis.2d 442, 665 N.W.2d 391 (citing *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis.2d 231, 237, 554 N.W.2d 232 (Ct. App. 1996)). The "actually litigated" requirement means that before issue preclusion can apply, "one must have had a fair opportunity procedurally, substantively and evidentially to litigate the issue." *Id.* ¶ 15 (quoting *Dane Cnty. v. Dane Cnty. Union Local 65*, 210 Wis.2d 267, 278, 565 N.W.2d 540 (Ct. App. 1996)). The issue must also have been "necessary to the outcome of the first action," and the party must have been motivated to prevail. *In re Paternity of Amber J.F.*, 205 Wis.2d 510, 517, 557 N.W.2d 84 (Ct. App. 1996) (citing *N. States Power*, 189 Wis.2d at 550). As to fairness, a court considering whether to apply issue preclusion considers five factors:

> (1) could the party against whom preclusion is sought, as [a] matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first

> trial than in the second; or (5) are matters of public policy and
> individual circumstances involved that would render the
> application of collateral estoppel to be fundamentally unfair,
> including inadequate opportunity or incentive to obtain a full
> and fair adjudication in the initial action?

*Masko*, 2003 WI App 124 at ¶ 6 (quoting *Michelle T. v. Crozier*, 173 Wis.2d 681, 688-89,

495 N.W.2d 327 (1993)). Finally, the party seeking to apply issue preclusion bears the

burden of establishing its appropriateness. *Id.* ¶ 4 (citing *State ex rel. Flowers v. H & SS*

*Dept.*, 81 Wis.2d 376, 389, 260 N.W.2d 727 (1978)).

Defendants cannot meet this burden here. Whether there was probable cause to

conclude that plaintiff was retaliated against was one of the central issues litigated in the

ERD proceedings. Likewise, plaintiff was represented by counsel and had sufficient

motivation to prevail. However, as plaintiff notes, there were a number of procedural

limitations in those proceedings. First, the evidence was not presented to a jury, but only

to an administrative body. Second, the evidence presented was not governed by the

Federal Rules of Evidence. Third, the conduct at issue here is broader than that addressed

in the ERD proceedings because the most materially adverse actions occurred once the

state proceedings concluded (plaintiff's layoff and subsequent non-rehiring), making the

earlier conduct part of a continuing series. Fourth, appellate review was deferential.

Additionally, plaintiff's policy argument raises a valid point: permitting issue

preclusion in these circumstances may, in fact, embolden employers to continue or escalate

a pattern of misbehavior following the conclusion of state proceedings because a plaintiff

would not be able to bring evidence of the earlier behavior into federal court, thereby

crippling a plaintiff's claims. Accordingly, issue preclusion does not apply and this part of

defendants' motion in limine is denied.

In the alternative, defendants seek to bar plaintiff's claims predating April 27, 2010, because of his failure to exhaust administrative remedies. (Defs.' MIL (dkt. #61) 5-6.) While somewhat confusingly asserted, defendants appear to argue that plaintiff should not be able to litigate claims predating his June 2015 termination because: (1) he failed to receive a right-to-sue letter or to file suit within 90 days of the conclusion of the state proceedings; and (2) he provided the EEOC investigator "a timeline of events he believed to be important to his claim" which started with his June 2015 layoff. (*Id.*) In response, plaintiff notes that an ERD/EEOC charge is not required before bringing a claim under § 1981. (Pl.'s Opp'n (dkt. #85) 5.) Plaintiff also argues that "the events involved in the 2010 ERD complaints . . . [are] probative" of his retaliation claim. (*Id.* at 5-6.) Further, plaintiff contends that defendants' proposed verdict form "asks the jury to determine if the complaints were made in good faith," which requires plaintiff to demonstrate his good-faith belief that he was being subjected to discrimination. (*Id.* at 6.)

Plaintiff is correct that he was not required to file a discrimination charge before pursuing a § 1981 claim in federal court. *See Tyson v. Gannett Co.*, 538 F.3d 781, 783 (7th Cir. 2008). As for Title VII, a plaintiff must file a charge with the EEOC or the appropriate state agency -- here the Wisconsin ERD -- "within 300 days of the alleged discriminatory act or unlawful practice." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016) (citing 42 U.S.C. § 2000e-5(e)(1)). Here, plaintiff filed his ERD complaints in 2010 alleging discrimination and retaliation and he did not need to file additional charges detailing behavior post-dating his filings. *Little v. Ill. Dept. of Pub. Health*, No. 16-CV-

10377, 2017 WL 5903835, at *3 (N.D. Ill. Nov. 30, 2017) ("courts have allowed Title VII claims to proceed where the plaintiff's allegations included conduct that occurred after the plaintiff filed an EEOC charge, as long as those later actions were part of a continuing pattern of mistreatment involving similar types of conduct and the same individuals"). As to claims not raised in either ERD complaint but that predate their filing, plaintiff apparently is not pursuing them. (*See* Pl.'s MIL (dkt. #72) 1-2 (explaining that the ERD complaints "concerned actions prior to February 22, 2010, . . . [and] between February 22, 2010 and October 6, 2010," while "the claims in this action arose after October 6, 2010"). Accordingly, defendants' motion in limine is denied as moot.

### III. Plaintiff's First Motion in Limine (dkt. #72)

Plaintiff seeks to preclude defendants from arguing that the ERD's findings of no probable cause and their subsequent affirmances are evidence that defendants did not discriminate or retaliate against him. (Pl.'s MIL (dkt. #72) 1.) Plaintiff considers this evidence to be irrelevant because the ERD proceedings concerned actions taken before February 22, 2010 and actions between that date and October 6, 2010, while his "claims in this action arose after October 6, 2010." (*Id.* at 1-2.) Likewise, he considers this evidence to be unduly prejudicial. Defendants respond that they "have a right to present their defense" such that "[t]he fact that the ERD, LIRC, and the Dane County Circuit Court found no evidence to support Balogn's claim . . . is relevant to the Defendants' lack of motive to retaliate against Balogun." (Defs.' Opp'n (dkt. #88) 1.) They also seek, through their opposition, "to limit the evidence in this case to the post-October 6, 2010 events unless . . . necessary for purposes of background." (*Id.* at 3.)

Plaintiff's motion is granted. First, evidence concerning the state proceedings would likely confuse the jury, who may not be able to distinguish between the prior proceedings and those occurring in federal court. Second, while defendants argue that if the state court found for plaintiff "there would be a stronger argument to support an inference that the Defendants wanted to get rid of [him] because they were angry about the outcome of his previous cases" (*id.* at 2), the ultimate outcome of the state proceedings is irrelevant to the question of retaliation. Any way the proceedings concluded, it was the *filing* of the ERD complaints that created a reason for retaliation.

As to defendants' request to limit the evidence predating October 2010 to providing background, that will be the subject of discussion at the final pretrial conference on July 30, 2019. Particularly problematic is plaintiff's possible affirmative use of the final termination of the ERD proceedings as a possible triggering point to terminate plaintiff's employment.

## IV. Plaintiff's Second Motion in Limine (dkt. #97)

Plaintiff also filed a second, belated, motion in limine that seeks "to prevent hearsay testimony" from Bradley and others about Balogun's job performance. (Pl.'s 2d MIL (dkt. #97) 1.) Defendants quickly filed an opposition contending that "these statements will not be offered for the truth of the matter, but rather the effect on the listener," taking them outside the prohibition on hearsay. (Defs.' 2d Opp'n (dkt. #100) 1.) In the alternative, defendants contend that these statements could be viewed as exceptions to the rule against hearsay as present sense impressions, excited utterances, or statements of then-existing mental or emotional conditions. (*Id.*)

Hearsay is defined as a statement made by the declarant outside the current trial or hearing that is offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Statements offered for other purposes fall outside the scope of hearsay. *Id.* Plaintiff identifies testimony from Bradley that he received complaints about Balogun's work performance from others. Since these statements could fall under one of the exceptions or outside the rule against hearsay entirely, the court will reserve as to this motion pending a proffer by defendants as to the specific statements they intend to elicit from Bradley or others as to plaintiff's job performance.

## ORDER

IT IS ORDERED that:

1) The reserved portion of defendants' motion for summary judgment (dkt. #22) is GRANTED.

2) Defendants' motion in limine (dkt. #61) is DENIED and DENIED AS MOOT.

3) Plaintiff's motion in limine (dkt. #72) is GRANTED IN PART and RESERVED IN PART.

4) Plaintiff's second motion in limine (dkt. #97) is RESERVED.

Entered this 26th day of July, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge