OPENING REMARKS AND VOIR DIRE TO JURY PANEL

I am Judge Conley.  You are here for possible jury service in case no. 18-cv-301-wmc, Kehinde Balogun versus The Board of Regents of the University of Wisconsin System, Kevin Cherek and Robert Burrow.  Many people approach jury service with apprehension and anxiety, but if each of us does our job, most people end up feeling that jury service was a worthwhile, even gratifying, experience.

The United States Courthouse that you entered this morning is not the judges' courthouse; neither is it the lawyers' courthouse; nor even the litigants' courthouse.  This is your courthouse and your system of justice.  Indeed, this building belongs to the public; and it is important that each of us keep in mind that the public's business is being conducted here.

To be able to continue to serve you better, we seek your input, not just in the case before us but in a larger sense.  Each of you has a stake in this system.  When this trial concludes you will not only be asked to rule on this case, but also to tell us anonymously what we did right and what we did wrong.  We cannot serve the public and improve our system of justice without each of your valuable contributions.

Other than by paying taxes and voting, service on a jury is probably the most important duty that most of us will undertake in support of our system of government.  Only by realizing how unique our system of justice is, and how dependent it is on good people like you, can we truly understand and appreciate it.

Trial by jury has been eliminated in many countries of the world.  The United States justice system is the place where most of the jury trials in the world are now held.  Contrary

1

to general belief, we have the highest involvement of non-lawyers of any justice system in the world.  That is a heritage handed down by the people who founded our country.  I cannot describe its importance any better than the U.S. Supreme Court Justices did in the video you watched this morning, so I won't try.

Instead, I will try to give you a sense of your role as jurors in this trial.  My job as judge is to decide legal questions and your job as jurors is to decide fact questions.  The judge decides what kind of evidence is admissible and instructs the jurors at the end of the trial as to the law that they must apply in deciding the case.  These instructions provide the legal yard stick by which the jurors must measure the evidence in order to decide the case, but the jurors decide what the facts are -- that is, they decide from the evidence admitted at trial what actually happened.  An important part of the jurors' job is to decide what testimony to believe and what testimony not to believe.

In deciding what actually happened, the jurors are searching for the truth.  Many people in fact define a trial as a search for the truth.  The trial begins with "Voir Dire," which literally means from the Latin and French "to speak the truth" or "to inquire."  Consistent with these definitions, the purpose of voir dire is to ask a series of questions of jury panel members and to obtain candid, truthful responses to help ensure that we seat a jury comprised of impartial individuals -- a fundamental right of both parties.

The clerk has already seated the first 14 prospective jurors in the jury box.  All prospective jurors, whether seated in the box or not, should listen carefully as they may be called and asked the same or similar questions.

The deputy clerk will now swear the entire jury panel.

I want to introduce each of you to our court personnel:

    A. Judge William Conley

    B. Deputy Clerk Jaime Smith

[after introduction, inquire if anyone on the jury knows them]

## QUESTIONS

1. <u>Statement of the case:</u>  Kehinde ("Tony") Balogun claims that he was retaliated against for complaining about job discrimination because of his race and national origin while working as an IS Resource Support Technician Senior at the University of Wisconsin-Madison.  Defendants, the Board of Regents of the University of Wisconsin System, Kevin Cherek and Robert Burrow, deny these claims.
    a. Have any one of you ever heard of this case before today?  How?  When?
    b. When you heard about it, did you form any opinion concerning the case?
    c. Do you believe that your ability to serve impartially as a juror in this case has been affected by what you have heard about it?

2. The trial of this case will begin August 12, 2019, and will last three or four days.  The trial day will generally run from 8:30 a.m. until 5:30 p.m., though we may begin slightly earlier or go later if necessary to ensure completion within the promised time frame.  You will have at least an hour for lunch and two additional short breaks of 15-20 minutes, one in the morning and one in the afternoon.  Is there any one of you who would be unable to serve as a juror during this time for any reason, including vision, hearing or other health limitations?

3. Counsel to stand and tell the jury where they practice and with whom, and then introduce their client, including any party representative at counsel table.  Ask panel whether anyone knows counsel, their associates or partners, the parties or corporate representative.  If anyone has had involvement with counsel or party, have you formed any opinions positive or negative about that party?

4. The following people or entities are also involved in this case or may be called as witnesses in this case. Please raise your hand if you know any of these people:
    a. Rebecca Balogun
    b. Wayne Bradley
    c. Travis Harvey*
    d. Sharlene Heacox*
    e. Kathy Mather
    f. Kathryn Mutchler*
    g. Meghan Owens
    h. Diana Rogers*
    i. Fred Schultze
    j. Scott Wingers*

5. Questions to prospective jurors:
    a. Please stand up and tell us about yourself.
    b. Examples:
        i. Name, age, and city or town of residence.
        ii. Where born and raised.
        iii. Marital status and number of children, if any.
        iv. Current occupation (former if retired).
        v. Current (or former) occupation of your spouse or domestic partner.
        vi. Any military service, including branch, rank and approximate date of discharge.
        vii. How far you went in school and major areas of study, if any.
        viii. Memberships in any groups or organizations.
        ix. Hobbies and leisure-time activities.
        x. Favorite types of reading material.
        xi. Favorite types of television shows, movies, music or other entertainment.

---

* May call.

      xii. Bumper stickers.

      xiii. Letters to editor or call in to radio or TV show.

      xiv. Regular contributor to any blogs, online discussion groups or online chat rooms.

      xv. Primary source of news.

*[Questions to 14 prospective jurors in box. Reminder to others to listen closely and try to remember if would have raised hand in response to any questions posed.]*

6. General questions regarding prior experience with court proceedings:
   a. Have any of you ever been a party to a lawsuit? Describe circumstances.
   b. Have any of you ever been a witness in a lawsuit?
   c. How many of you have served previously on a jury? Of those of you who have, please describe your experience. Were you ever the foreperson on a jury?
   d. Have you or anyone close to you, ever worked in a law firm or taken law classes?
   e. Do any of you have any strong feelings -- positive or negative -- about lawyers in general or the lawyers involved here specifically?
   f. Do any of you know any of the other persons on the jury panel?

7. Case-specific questions to panel:
   a. Have you or anyone close to you ever been employed
      i. By the Board of the Regents of the University of Wisconsin System?
      ii. By the University of Wisconsin-Madison?
      iii. As a computer technician?

   b. Have you or anyone close to you had *any* experience -- whether positive or negative -- with the University of Wisconsin that may affect your ability to be impartial in this case?
   c. Was your employment or the employment of someone close to you impacted -- positively or negatively -- by the 2015-2017 Wisconsin budget, including

but not only limited to, cuts to the University of Wisconsin System?

d. Have you or anyone close to you ever filed a complaint, grievance, or claim of any kind against an employer? Have you ever had a complaint, grievance or claim filed against you or your employer?

e. Have you, anyone close to you, or a co-worker ever been retaliated against by an employer for complaining about discrimination on the basis of disability, sex, race, religion, or national origin? Please explain. Would this experience -- whether positive or negative -- affect your ability to be impartial in this case?

f. Have you or anyone close to you participated as a witness in an employment complaint, grievance or claim, whether for or against an employer?

g. Have you or anyone close to you ever been employed in a position with responsibility for supervision of other employees or for making employment decisions, including decisions regarding promotion, hiring, disciplining, or terminating employees?

   i. If so, have any of the supervised employees complained about being discriminated against on the basis of disability, sex, race, religion, or national origin, *or* about being retaliated against for exercising their rights?

   ii. If so, would this experience -- whether positive or negative -- affect your ability to be impartial in this case?

h. Except as already discussed, have you ever worked for an employer that was sued by an employee for retaliating against an employee who complained of discrimination? Please explain. If so, would this experience -- whether positive or negative -- affect your ability to be impartial in this case?

      i. Except as already discussed, have you or anyone close to you been subject to what you or they consider to be an unfair employment decision such as a discipline, suspension, or termination? Please explain.

      j. Do you believe that *no* workplace disagreements are motivated by disability, sex, race, religion, or national origin? Do you believe that *all* workplace disagreements are motivated by one or more of those factors?

      k. Do any of you think that all employee claims of retaliation by an employer have merit? Similarly, do any of you think that no retaliation cases have merit?

8. At the end of the case, I will give you instructions that will govern your deliberations. You are required to follow those instructions, even if you do not agree with them. Is there any one of you who would be unable or unwilling to follow these instructions?

9. Should the evidence support it, would anyone have any difficulty in awarding damages in this case in a substantial amount? Similarly, should the evidence support it, would anyone have any difficulty in awarding *no* damages or a small amount of damages?

10. Do you know of any reason whatsoever why you could not sit as a trial juror with absolute impartiality to all the parties in this case?

- Side bar to address strikes for cause and possible follow up questions.
- Exercise preemptory challenges, during which read introductory instructions on conduct during breaks and recesses.
- Swear in jury and take break.